IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

WEST FORK PARTNERS, L.P., §
§
Plaintiff, §
§ Civil Action No. 3:09-CV-0370-D
VS. §
§
CHESAPEAKE EXPLORATION, L.L.C., §
f/k/a CHESAPEAKE EXPLORATION §
LIMITED PARTNERSHIP, et al., §
§
Defendants. §

MEMORANDUM OPINION
AND ORDER

In this case removed on the basis of diversity of citizenship, plaintiff's motion to remand principally presents the question whether the removing defendants have satisfied their heavy burden of establishing the improper joinder of the Texas-citizen defendants. Concluding that the removing defendants have not established improper joinder, the court grants plaintiff's motion and remands this case to state court.[1]

I

According to the second amended petition of plaintiff West Fork Partners, LP ("West Fork"), in May 2003 West Fork and two other entities (collectively, the "West Fork Entities") entered into several agreements (the "Chesapeake Agreements") with Dale Resources, LLC ("Dale"), including an Oil and Gas Lease, Central Facilities Easement; Right-of-Way Easement, and Well Operation and

[1]The court denies, however, plaintiff's request for attorney's fees and costs under 28 U.S.C. § 1447(c). *See infra* § VI.

Subsurface Easement.[2] West Fork maintains that the Chesapeake Agreements are interrelated and intended to be read together to grant Dale an oil and gas lease covering certain lands owned by the West Fork Entities (the "West Fork Lands"), along with various easements allowing Dale to lay pipelines and construct certain facilities necessary for oil and gas production and transportation.

In September 2006 Dale sold and assigned its rights under the Oil and Gas Lease, the Lease Agreement, and the Well Operation and Subsurface Easement to Chesapeake Exploration Limited Partnership, which later became defendant Chesapeake Exploration, L.L.C. ("Chesapeake"). Dale assigned its rights under the Central Facilities Easement and Right-of-Way Easement to defendant West Fork Pipeline Company I, L.P. ("WFPC"), and then subsequently to defendant Texas Midstream Gas Services, L.L.C. ("TMGS"). West Fork alleges that it only consented to the above transfers because Dale represented that TMGS is wholly-owned, directly or indirectly, by Chesapeake and that TMGS would assume all of its obligations under the agreements.

After allegedly learning that TMGS intended to construct pipelines on the West Fork Lands without adhering to the Oil and Gas Lease's requirements, West Fork, a citizen of Texas, filed this suit in state court against Chesapeake, TMGS, Dale, WFPC,

---

[2]In May 2004 the West Fork Entities and Dale agreed to amend the Chesapeake Agreements.

Chesapeake Energy Marketing, Inc. ("CEMI"), and Enterprise Texas Pipeline, LLC ("Enterprise"), asserting Texas state-law claims for declaratory judgment, breach of contract, and negligent misrepresentation. Defendants Chesapeake, TMGS, and CEMI (the "removing defendants") then removed the suit on the basis of diversity jurisdiction, contending that the Texas citizenship of defendants Dale, WFPC, and Enterprise could be disregarded for purposes of determining complete diversity because they had been improperly joined. The removing defendants maintain that there is no reasonable basis for the court to predict that West Fork might recover under Texas law against Dale, WFPC, or Enterprise.

West Fork moves to remand, contending that the removing defendants failed to effect timely removal due to a defective notice of removal, and that, because Dale, WFPC, and Enterprise have not been improperly joined, the court lacks diversity jurisdiction.

II

Although a defendant can remove a case to federal court based on diversity jurisdiction, *see* 28 U.S.C. §§ 1332 and 1441(b), such jurisdiction requires that "'all persons on one side of the controversy be citizens of different states than all persons on the other side.'" *Harvey v. Grey Wolf Drilling Co.,* 542 F.3d 1077, 1079 (5th Cir. 2008) (quoting *McLaughlin v. Miss. Power Co.,* 376 F.3d 344, 353 (5th Cir. 2004)). This means that no plaintiff can

be a citizen of the same state as even one defendant. Moreover, under 28 U.S.C. § 1441(b), a case cannot be removed based on diversity jurisdiction if any properly joined defendant is a citizen of the state in which the action is brought. *See* 28 U.S.C. § 1441(b). It appears to be undisputed that Dale, WFPC, and Enterprise are citizens of Texas.

III

Before reaching the question of improper joinder, the court must address West Fork's contention that this case should be remanded because the notice of removal was defective and failed to comply with the requirements of 28 U.S.C. § 1446 within the 30-day statutory period for removal.

Section 1446(b) provides, in pertinent part:

> [i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]

It is undisputed that the removing defendants received a paper giving rise to diversity jurisdiction on February 20, 2009, when West Fork disclosed to the removing defendants the names and citizenship of all its limited partners. Consequently, it was necessary that the notice of removal be filed by March 22, 2009. The removing defendants filed the notice on February 26, 2009——well within the 30 days granted by § 1446(b). On March 6, 2009,

however, the court filed an order directing that an amended notice of removal be filed due to defects in the notice of removal.[3] The removing defendants filed their amended notice of removal on March 19, 2009, prior to the deadline specified in the court's order and within the 30-day period prescribed by § 1446(b). In the amended notice, the removing defendants added a paragraph alleging that WFPC had been improperly or fraudulently joined to defeat diversity, *see* Am. Notice of Removal ¶ 9, and they changed "Defendant Enterprise Texas Pipeline, *Inc.*," Notice of Removal ¶ 9 (emphasis added), to "Defendant Enterprise Texas Pipeline, *LLC*," Am. Notice of Removal ¶ 10 (emphasis added).

In its motion to remand, West Fork essentially relies on the defects in the notice that the court identified in its March 6, 2009 order, and it contends that the amended notice cannot correct these defects because it was filed outside of the 30-day period prescribed by § 1446(b). Other than suggesting that the amended notice was untimely filed, West Fork does not argue that the amended notice itself was defective. West Fork asserts that the deadline was March 12, 2009. But this would be 20, not 30, days after the removing defendants received notice. The correct date is

[3]The court's March 6, 2009 order stated that the notice failed either to plead the citizenship of WFPC or to plead that WFPC had been improperly joined. The court also noted that, unless the removing defendants relied on improper joinder with respect to WFPC, they had also failed to explain why WFPC had not joined in the notice of removal.

March 22, 2009. Therefore, the amended notice filed on March 19, 2009 timely corrected the defects in the notice of removal. *See, e.g., Energy Catering Servs., Inc. v. Burrow*, 911 F. Supp. 221, 222-23 (E.D. La. 1995) ("A defendant is free to amend his notice of removal within the thirty day period of 28 U.S.C. § 1446(b)."); 14C Charles Alan Wright, et al., *Federal Practice and Procedure*, § 3733, at 357 (3d ed. 1998) ("The notice of removal . . . may be amended freely by the defendant prior to the expiration of the thirty-day period for seeking removal[.]").

Accordingly, West Fork has not established that this case should be remanded based on a defective notice of removal.[4]

---

[4]Moreover, assuming *arguendo* that the amended notice was filed after the 30-day period had expired, the court would nonetheless hold that the amended notice was timely because it merely clarified jurisdictional grounds that the removing defendants had already stated, albeit imperfectly, in the notice. *See, e.g., Gargiulo v. Dessauer,* 2004 WL 966240, at *2 (E.D. Pa. May 5, 2004) ("An imperfect or defective allegation can be amended outside the thirty-day period for removal provided for under 28 U.S.C. § 1446, but a missing or completely new jurisdictional allegation may not be added by amendment after the thirty-day period has expired."); *CBS Inc. v. Snyder*, 762 F. Supp. 71, 73 (S.D.N.Y. 1991) ("The prior decisions have made a distinction between an 'imperfect' or 'defective' allegation and a wholly missing allegation, which cannot be supplied by amendment after the 30-day period has run."); Wright, et al., *supra*, § 3733, at 358 (stating that after expiration of 30-day period, "the notice may be amended only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice.").

The notice broadly alleged theories of both improper joinder and complete diversity, but it did not specify which theory applied to WFPC; consequently, the added paragraph of the amended notice alleging improper joinder with respect to WFPC served to clarify jurisdictional grounds already stated——i.e., that the non-removing defendants, including WFPC, had been improperly joined——not to supply an entirely new jurisdictional basis. Moreover, the notice,

IV

The court must next decide whether the removing defendants have satisfied their heavy burden of establishing improper joinder of the Texas-citizen defendants.

"The doctrine of improper joinder . . . entitle[s] a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). "When a defendant removes a case to federal court on a claim of improper joinder [of an in-state defendant], the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper." *Id.* at 576. Improper joinder is established by showing that there was either actual fraud in the pleading of jurisdictional facts or that the plaintiff is unable to establish a cause of action against the non-diverse defendant in state court. *Id.* at 573 (citing *Travis v. Irby,* 326 F.3d 644, 646-47 (5th Cir. 2003)).

---

in alleging that "[West Fork] has amended the Petition twice in an attempt to add non-diverse defendants to defeat removal," Notice ¶ 1, implicitly suggested that WFPC was an improperly-joined, non-diverse defendant. West Fork filed its original petition against Chesapeake and TMGS, and then added Dale and WFPC as defendants in its first amended petition, alleging both to be Texas entities. The amended notice therefore simply made explicit the jurisdictional basis implied in the notice. Consequently, even if the amended notice was filed after the 30-day period prescribed by § 1446(b), it was timely because it merely set out more specifically the grounds for removal stated imperfectly in the notice.

Under the second alternative——the one at issue in this case——the test for improper joinder "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* The court must "evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." *Guillory v. PPG Indus., Inc.,* 434 F.3d 303, 308 (5th Cir. 2005) (internal quotation marks omitted). Thus "[t]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Smallwood,* 385 F.3d at 574.

There are two "proper means for predicting whether a plaintiff has a reasonable basis of recovery under state law." *Id.* at 573. "The court may conduct a [Fed. R. Civ. P.] 12(b)(6)-type analysis,[5] looking initially at the allegations of the complaint to determine

[5]In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive the motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).

whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* (footnote omitted). In cases where "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* Although this is a matter for the court's discretion, "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74. The court is not permitted to "mov[e] . . . beyond jurisdiction and into a resolution of the merits." *Id.* at 574.

As noted, West Fork has joined three in-state defendants: WFPC, Dale, and Enterprise. Therefore, if, as to just one of these defendants, the removing defendants fail to satisfy their heavy burden of establishing improper joinder, this case must be remanded to state court.

V

West Fork seeks a declaratory judgment that it has not consented to Dale's and WFPC's assignments of their interests in the Chesapeake Agreements to Chesapeake, TMGS, and/or any other assignee. West Fork also brings an alternative claim of negligent misrepresentation against Dale and WFPC, alleging that they

misrepresented to West Fork that, upon the assignment of their rights and obligations under the Chesapeake Agreements, TMGS would assume all of Dale's obligations under the Chesapeake Agreements, thereby inducing West Fork to consent to the assignments to its detriment.[6]

A

The removing defendants first argue that West Fork's negligent misrepresentation claim is barred by limitations. It is undisputed that a claim for negligent misrepresentation is subject to a two-year statute of limitations, which runs from the date of the alleged misrepresentation. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a) (Vernon 2002). Because the alleged negligent misrepresentation on which West Fork relies was made in a letter dated September 25, 2006, and because West Fork did not add Dale and WFPC as defendants until November 3, 2008——outside the two-year limitations period, the removing defendants maintain that West Fork's negligent misrepresentation claim is time-barred. West Fork does not contend that it filed its claim within the limitations period; rather, it maintains that the "discovery rule" operated to toll the limitations period until TMGS revealed to West Fork that

---

[6]Because the court concludes that the removing defendants have not met their burden regarding West Fork's negligent misrepresentation claim, it need not address the declaratory judgment claim. Additionally, because the court concludes that it has a reasonable basis to predict that West Fork might recover under Texas law against Dale and/or WFPC, it need not consider West Fork's claims against Enterprise.

it did not consider itself subject to the restrictions in the Chesapeake Agreements or the assignee of all of Dale's obligations thereunder.

Under Texas law, the discovery rule is an exception to the general rule that a cause of action accrues when a wrongful act causes some legal injury. *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 357 (5th Cir. 2008). It provides that the statute of limitations will run "not from the date of the [defendant's] wrongful act or omission, but from the date the nature of the injury was or should have been discovered by the plaintiff." *Weaver v. Witt*, 561 S.W.2d 792, 793-94 (Tex. 1977). The discovery rule tolls the statute of limitations only if the injury is both inherently undiscoverable and objectively verifiable. *K3C Inc. v. Bank of Am., N.A.*, 204 Fed. Appx. 455, 462 (5th Cir. 2006) (per curiam) (citing *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)). An injury is inherently undiscoverable if it is of a type not generally discoverable by the exercise of reasonable diligence. *See HECI Exploration*, 982 S.W.2d at 886.

Although not required under Texas procedure to plead the discovery rule until a defendant asserted the affirmative defense of limitations,[7] West Fork implies in its second amended petition

---

[7]Under Texas procedure, West Fork was not required to plead the discovery rule until a defendant pleaded the affirmative defense of limitations. "A party seeking to avail itself of the discovery rule must therefore plead the rule, either in its original petition or in an amended or supplemented petition in

that it relies on the discovery rule, averring that "[i]t has recently come to the West Fork Entities' attention that [TMGS] intends to construct Easement Pipelines on the West Fork Lands (the 'Proposed Construction') without providing plans for the Proposed Construction or seeking the required consent from the West Fork Entities." 2d. Am. Pet. ¶ 16. West Fork alleges that

> [TMGS] purports to have authority to circumvent the notice and consent requirements of the Oil and Gas Lease because said lease was assigned to Chesapeake, and not directly to [TMGS]. This is not permitted. As stated above, the Chesapeake Agreements are interrelated and intended to be read together to create an indivisible bundle of rights and obligations . . . . Accordingly, [TMGS] (and Chesapeake) cannot avoid . . . the notice and consent requirements of the Oil and Gas Lease by the artificial separation of the Chesapeake Agreements.

*Id.* In other words, West Fork avers that until TMGS revealed its intention to construct pipelines on the West Fork Lands without providing plans for the proposed construction or seeking consent from the West Fork Entities, as required by the Oil and Gas Lease, West Fork could not have known that, contrary to Dale's and WFPC's representations, TMGS did not consider itself bound by the lessee obligations of the Oil and Gas Lease.

---

response to defendant's assertion of the defense as a matter in avoidance." *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988). Once the discovery rule is pleaded, the defendant must negate the exception. *Pustejovsky v. Rapid-American Corp.*, 35 S.W.3d 643, 646 (Tex. 2000) ("When, as here, the plaintiff pleads the discovery rule as an exception to limitations, the defendant has the burden of negating that exception as well.").

Under the Rule 12(b)(6) standard, "[i]t is well settled . . . that in order for a defendant to prevail on the basis of limitations at the pleadings stage, the plaintiff must normally plead [it]self out of court." *Funches v. City of Dallas*, 1999 WL 261842, at *2 (N.D. Tex. Apr. 28, 1999) (Fitzwater, J.) (citing *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995) (holding that "if a plaintiff pleads facts that show its suit barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis")). In their brief, the removing defendants do not even mention the discovery rule, let alone demonstrate that West Fork has pleaded facts in its second amended petition that show the inapplicability of the rule to its negligent misrepresentation claim. And given the onerous burden that the removing defendants shoulder under the fraudulent joinder doctrine, this deficiency is fatal to their right of removal. The court is unable to conclude that West Fork's negligent misrepresentation claim is barred by limitations.

B

Turning to the merits of the negligent misrepresentation claim, the court concludes that the removing defendants have failed to show that there is no reasonable basis to predict that West Fork might be able to recover against Dale and/or WFPC on this basis.

To recover under Texas law for negligent misrepresentation, West Fork must prove that (1) Dale and/or WFPC made a

representation in the course of its business, or in a transaction in which it had a pecuniary interest, (2) Dale and/or WFPC supplied false information for the guidance of others in its business, (3) Dale and/or WFPC did not exercise reasonable care or competence in obtaining or communicating the information, and (4) West Fork suffered pecuniary loss by justifiably relying on the representation. *See First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 808-09 (5th Cir. 1998) (citing *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)). In its second amended petition, West Fork avers that in order to "induce West Fork to consent to the assignment [of Dale's rights under the Central Facilities Easement and Right-of-Way Easement to TMGS]," 2d Am. Pet. ¶ 14, "[Dale] and [WFPC] . . . represented that . . . [TMGS] was to assume 'all of Dale's obligations under the agreements,'" and that "[TMGS] is wholly-owned by Chesapeake Energy Corporation——an owner of Chesapeake." *Id.* But these representations, West Fork avers, were "a misstatement of fact," *id.* at ¶ 37, because TMGS' intended construction on West Fork Lands, in violation of the Oil and Gas Lease, demonstrates that "Chesapeake and [TMGS] have: (i) failed to act as, or have denied their relationship as 'Affiliates,' and (ii) refused to honor and perform the obligations created by the Chesapeake Agreements." *Id.* at ¶¶ 15, 16. West Fork further alleges that Dale and WFPC did not use reasonable care in communicating the misrepresentations, West

Fork justifiably relied on the misrepresentations, and the misrepresentations proximately caused injury to West Fork because "West Fork only consented to the . . . transfers of [Dale's] rights and duties under the Chesapeake Agreements based upon the above-mentioned [mis]representations." *Id.* at ¶¶ 15, 37.

The removing defendants contend that West Fork's negligent misrepresentation claim must fail because West Fork cannot establish justifiable reliance. They maintain that "[t]his was an arms-length transaction between sophisticated parties," and it was "not reasonable as a matter of law for [West Fork] to rely on Dale for a description of the relationships between Chesapeake and TMGS[;]" instead, West Fork should have sought assurances from TMGS itself. Ds. Br. 9-10. Whether West Fork's reliance was reasonable or justified, however, is generally a question of fact. *See Geosearch, Inc. v. Howell Petroleum Corp.*, 819 F.2d 521, 527 (5th Cir. 1987) (citing Texas law). It "is not a proper matter for dismissal on the pleadings." *See Celanese Corp. v. Coastal Water Auth.*, 475 F.Supp.2d 623, 638 (S.D. Tex. 2007) (citing Texas law); *Cotter v. Smith*, 2007 WL 1514022, at *3 (S.D. Miss. May 21, 2007) (holding that question of reasonable reliance is question of fact and "[a]t this juncture [of ascertaining whether fraudulent joinder has occurred], the plaintiff's allegations must be accepted as true"). Therefore, while the removing defendants' allegations may be relevant to the ultimate merits of West Fork's negligent

misrepresentation claim, the court cannot say, under the pertinent improper joinder standard, that there is no reasonable basis to predict that West Fork might be able to recover against Dale and/or WFPC. *See Ferguson v. Sec. Life of Denver Ins. Co.*, 996 F. Supp. 597, 604 (N.D. Tex. 1998) (Kaplan, J.) (acknowledging that while removing defendant's arguments regarding plaintiff's sophistication and independent investigation may cast doubt on reliance element, defendant nonetheless failed to prove that there was "absolutely no possibility" that plaintiff could recover against in-state defendant).

VI

West Fork requests an award of attorney's fees and costs. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (citing *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004); *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000)). West Fork has not demonstrated that the removing defendants lacked an objectively reasonable basis for seeking removal. It merely proffers the conclusory assertion that the removing defendants "had no objectively reasonable grounds to believe removal of this Lawsuit was legally proper," and cites

cases in which this court has awarded fees under § 1447(c). P. Br. 16. Accordingly, West Fork’s request for an award of attorney’s fees and costs is denied.

* * *

The court holds that the removing defendants have failed to satisfy their heavy burden of establishing that Dale and/or WFPC——two of the in-state defendants——have been improperly joined. The court grants West Fork’s March 27, 2009 motion to remand because the court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). This action is remanded to the 95th Judicial District Court of Dallas County, Texas. The clerk shall effect the remand in accordance with the usual procedure.

**SO ORDERED.**

July 29, 2009.

SIDNEY A. FITZWATER
CHIEF JUDGE